UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 25-cr-029-SRU |
| | : | |
| KONSTANTINOS DIAMANTIS | : | |

## RULING ON MOTION TO WITHDRAW APPEARANCE

Attorney Norman Pattis has moved to withdraw as counsel for the defendant Konstantinos Diamantis in the above-captioned matter. ECF 63. The motion was referred to the undersigned for an *ex parte* hearing and a ruling. ECF 69, 70. For the reasons that follow, the motion is GRANTED.

**A. Factual Background**

Pattis has appeared for Diamantis in two cases resulting from a criminal investigation. The indictment in the first case was returned in May 2024. *See U.S. v. Diamantis*, 24-cr-108-SRU (D. Conn.) ("2024 indictment"). The second indictment was returned in February 2025. *See U.S. v. Diamantis*, 25-cr-29-SRU (D. Conn.) ("2025 indictment"). The 2024 indictment charged Diamantis with various extortion and bribery offenses related to his dealings with construction contractors while acting as an official of the State of Connecticut. The 2025 indictment charged Diamantis and one other person with similar offenses in connection with a Medicaid audit of a health care provider. Following a jury trial in October 2025, Diamantis was convicted of 21 counts charged in the 2024 indictment.

Pattis now moves to withdraw from the present case (but not the 2024 case) due to nonpayment of a $65,000 fee balance. ECF 63. Diamantis has objected. ECF 68. The Court

conducted an evidentiary hearing *ex parte* and *in camera* on December 30, 2025, at which Pattis and Diamantis both submitted exhibits and testimony under seal.[1]

Based on the exhibits submitted by Pattis and Diamantis, consisting primarily of a retainer agreement and email/text correspondence, and their respective sworn testimony, the Court finds the following facts.

With respect to the 2024 indictment, Pattis and Diamantis entered into a retainer agreement dated June 24, 2024, for a flat fee of $250,000. Sealed Hrg. Ex. A at 3. Although Diamantis and Pattis were aware at that time that the government was investigating the Medicaid-related issues, the retainer agreement does not mention them. Instead, it lists only the 2024 case number and explicitly states that the "[a]greement covers **ONLY** the case(s) mentioned above and the Firm has not agreed to represent you in connection with any other matter or to provide any other legal services." *Id*. (emphasis in original). Although the retainer agreement did not specify a payment due date, *id.* at 3–6, it contains the following language:

> The Firm understands that people who seek its services are frequently not in the best financial circumstances so it endeavors to be patient and work with its client to a point. However, its asks that its clients keep in mind that we are a small firm and rely on our clients to pay its bill on a timely basis. *Timely payment of fees is a material condition of this agreement*.

Sealed Hrg. Ex. A at 4 (emphasis added).

On June 25, 2024, the day after Diamantis signed the fee agreement, he paid Pattis $80,000, leaving an unpaid balance of $170,000. Thereafter, between July 2024 and March 2025, Pattis repeatedly pressed Diamantis for payment of the balance owed, while emphasizing on multiple occasions the impact of non-payment upon his Firm, and Diamantis routinely

---

[1] AUSA Jonathan Francis also briefly appeared by telephone with the consent of Pattis and Diamantis to answer the Court's questions regarding the procedural history of the investigation and indictments.

promised that payment was imminent. Sealed Hrg. Ex. A at 26, 29, 32-38, 40, 43, 44, 46, 48, 52, 57-58, 60-62, and 64. By November 1, 2024, Diamantis indicated his understanding that time was of the essence when he wrote to Pattis: "You won't make an opening statement without 250,000 long into your account." Sealed Hrg. Ex. A at 44. Between August 1, 2024, and February 10, 2025, Diamantis made six additional payments totaling $105,000. He has not made any further payments towards the fee since then. In short, as of February 10, 2025, Diamantis had paid $185,000 of the fee and owed $65,000. Sealed Hrg. Ex. A at 2. [2]

The 2025 indictment was returned on February 25, 2025, and Pattis appeared for Diamantis at his arraignment and thereafter. ECF 1, 15. During the arraignment, when the Court inquired whether Pattis was retained counsel, Pattis responded: "In a related matter; we'll work this out." On April 3, 2025, Pattis emailed Diamantis stating he was "beyond frustrated about the fee situation in this case" and putting Diamantis on notice that he might seek to withdraw from one or both cases. Sealed Hrg. Ex. B at 14. In July 2025, at Pattis' direction, his office manager emailed Diamantis stating that "the case covered under your Retainer Agreement is set for jury selection on October 3," and that "there is a second trial in the Medicaid case scheduled for January that is not covered under this agreement but that Norm is willing to include providing your $65k balance due is paid immediately." Sealed Hrg. Ex. B at 12. Following receipt of this email, Diamantis spoke with Pattis and assured him he would obtain the money. To date, Diamantis has not paid the balance.

---

[2] On October 22, 2025, Mr. Diamantis made a payment of $1000. The evidence indicates that this was a partial reimbursement of an out-of-pocket expense incurred by Pattis' firm for a transcript, not a fee payment. Regardless, whether Diamantis owes $65,000 or $64,000 is not a material distinction.

As noted above, the 2024 indictment was tried in October 2025 resulting in a guilty verdict, and sentencing has been postponed pending trial in the present case.  *U.S. v. Diamantis*, 24-cr-108-SRU at ECF 114, 115.  Jury selection in the present case is scheduled for January 30, 2026.  ECF 53.

### B.  Legal Standard

Per Local Criminal Rule 1(c), withdrawals of appearances are subject to Local Civil Rule 7(e), which provides that where the client has not engaged other counsel or filed a personal appearance, withdrawal should only be permitted for good cause and after actual notice to the client.  As relevant to this case, good cause may be found if

> (4) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled; [or]
> (5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client[.]

Conn. R. Prof'l Conduct 1.16(b).  But even where good cause exists, "the court must balance the reasons for withdrawal with the impact of the withdrawal on the timing of the proceedings." *Curry v. Palmetto Sur. Corp.*, No. 3:21-cv-221 (SRU), 2022 WL 20507872, at *2 (D. Conn. Dec. 14, 2022) (citations and quotation marks omitted).  The district court has broad discretion in deciding a motion to withdraw, and it may be denied if it is made on the eve of trial or is likely to disrupt prosecution of the case. *Halo Tech Holdings, Inc. v. Cooper*, No. 3:07-cv-489 (AHN), 2008 WL 11377686, at *1 (D. Conn. Sept. 24, 2008).

### C.  Discussion

Pattis has established that there is good cause for withdrawal under Rule 1.16(b)(4) and (5) due to Diamantis' nonpayment of fees.  Diamantis objects that it was his understanding that it could be paid whenever he was able, so the unpaid balance of $65,000 is not yet due.  Pattis

4

disagrees. It is true that the June 2024 retainer agreement did not specify a due date; however, Diamantis' assertion that the time period for payment was indefinitely open-ended is belied by the parties' acknowledgement in the fee agreement that timely payment of the fee was a material condition, by Pattis' persistent demands for full payment between July 2024 and March 2025, Diamantis' repeated promises of imminent payment, and by Diamantis' assurances that Pattis would be paid in full prior to commencing trial on the 2024 indictment.

When executed, that fee agreement unambiguously applied only to the 2024 Action.[3] *See* Sealed Hrg. Ex. A at 3. However, it was later modified in July 2025 when Pattis offered to represent Diamantis in this second action subject to the provisions of the June 2024 retainer agreement if Diamantis would agree to pay the $65,000 unpaid balance immediately. Sealed Hrg. Ex. B at 12. The absence of any rejection or counteroffer by Diamantis in response to the July 2025 email setting forth this offer—coupled with his ongoing representations to Pattis that he would obtain the money and his ongoing cooperation in Pattis' work in this matter—permits the reasonable inference that there was mutual assent to modify the original agreement. *See NovaFund Advisors, LLC v. Capitala Grp., LLC*, No. 3:18-cv-1023 (MPS), 2022 WL 624524, at *14 (D. Conn. Mar. 3, 2022) (under Connecticut law, contract modification requires "mutual

---

[3] State law governs the interpretation of an attorney-client retainer agreement. *See*, *e.g.*, *Judd Burstein, P.C. v. Long*, 180 F. Supp. 3d 308, 315 (S.D.N.Y. 2016) (applying state law rules of contract construction to retainer agreement in fee dispute action), *aff'd*, 797 F. App'x 585, 587 (2d Cir. 2019); *see also David M. Somers & Assocs., P.C. v. Busch*, 283 Conn. 396, 402 (2007) (same). It is axiomatic under Connecticut law that if contract language is "clear and unambiguous, the contract is to be given effect according to its terms." *Sherman v. Doe*, No. 3:22-cv-1159 (VAB), 2025 WL 2432675, at *4 (D. Conn. Aug. 22, 2025) (quoting *PSE Consulting, Inc. v. Frank Mercede & Sons, Inc.*, 267 Conn. 279, 290, 838 A.2d 135 (2004)). Giving effect to express language of the written retainer agreement between two attorneys with experience in criminal defense—without regard to any extrinsic evidence suggesting they had some other intent—the Court concludes that the agreement covered only the 2024 Action at the time of its execution.

assent to the meaning and conditions of the modification," which "may be inferred from the attendant circumstances and conduct of the parties" including "by written or spoken words or by other acts or by failure to act") (quoting Connecticut Supreme Court decisions).  In short, pursuant to the modification, Pattis became obligated to represent Diamantis in this action if Diamantis met his corresponding obligation to immediately pay the $65,000 balance.

Diamantis' failure to fulfill the $65,000 payment obligation is substantial under the circumstances.  He objects that he has already paid nearly 75% of the total $250,000, ECF 68, and he argues that it is not uncommon for courts to deny requests to withdraw as criminal defense counsel where significant fees have already been paid, the client appears unable to make further payments, and substitute counsel would need time to catch up.  Although this argument might be persuasive if Pattis were seeking to withdraw from the 2024 case, the Court is not persuaded that Pattis should be compelled to provide representation at a second trial without any compensation whatsoever.  *See*, *e.g.*, *Halo Tech*, 2008 WL 11377686, at *1 (D. Conn. Sept. 24, 2008) ("[L]awyers are not indentured servants; they have a right to be paid for their services.") (citation omitted); *Bryka, LLC v. Holt Integrated Cirs., Inc.*, No. 3:20-cv-484 (RNC), 2021 WL 6337744, at *2 (D. Conn. May 5, 2021) ("Attorneys are not required to finance the litigation or render gratuitous services.") (cleaned up).  First, Pattis emphasized to Diamantis on multiple occasions the detrimental effect that nonpayment was having on his small firm.  In the context of a relatively small operation, a $65,000 fee balance is significant.  Second, the present indictment consists of eighteen counts, spans fourteen pages and includes allegations of conspiratorial conduct between Diamantis, his co-defendant and a third person who has been charged separately.  Preparing for trial and trying the case will be time-consuming.  To require Pattis to litigate two full cases for less than the price of one would cause undue financial burden on him

and his law firm. Consequently, there is good cause for withdrawal under Rule 1.16(b)(4) and (5).

Next, because trial is scheduled to proceed later this month, the Court considers whether the disruption caused by the withdrawal outweighs the reasons supporting it. Undoubtedly withdrawal will result in delay in this case and might also, depending on the preference of the Presiding Judge, have ripple effects on the timing of sentencing in the 2024 case. Nonetheless, withdrawal is still warranted. It is clear to the Court that Diamantis has no present ability to pay counsel and that he likely qualifies for court-appointed counsel. The Presiding Judge could continue the trial in the interests of justice, appoint lead counsel, and even appoint associate counsel, which would allow for new counsel to have adequate time to prepare for trial in an efficient manner. Moreover, if Diamantis qualifies for appointment of CJA counsel, it may be possible for Pattis and associate counsel from his firm to serve in that capacity, reducing the disruption to the parties and Court. In short, any disruption can be appropriately mitigated and does not outweigh the reasons supporting withdrawal.

Lastly, the Court finds that Pattis has provided Diamantis with reasonable notice of his intent to withdraw. Pattis raised the potential of withdrawal due to nonpayment via email on April 3, 2025, and then notified Diamantis via email on November 23, 2025, that a motion to withdraw would be forthcoming on December 1, 2025. Hrg. Ex. A at 21; Hrg. Ex. B at 14. Diamantis failed to make payment prior to December 1, and Pattis filed his motion on that date. More than six weeks have passed since the latter notice, but the nonpayment has not been cured.

### D. Conclusion

For the foregoing reasons, the Motion to Withdraw, ECF 63, is GRANTED. Absent further order of the Court, the hearing testimony and exhibits shall remain SEALED because the evidence concerning fees is intertwined with discussions on case developments and strategies that are subject to the attorney-client privilege.

This is not a recommended ruling. This is an order regarding case management which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. R. Mag. Judges 72.2. As such, it is an order of the Court unless reversed or modified by the District Judge upon motion timely made.

SO ORDERED, this 8th day of January, 2026, at Bridgeport, Connecticut.

/s/ S. Dave Vatti
S. DAVE VATTI
United States Magistrate Judge